950 So.2d 557 (2007)
Michelle DETRAZ
v.
Victor LEE d/b/a Virgin Nails.
No. 2005-C-1263.
Supreme Court of Louisiana.
January 17, 2007.
Rehearing Denied March 30, 2007.
*558 Law Office of Harold G. Toscano, Philip S. Aucoin, Jr., Lafayette, for Applicant.
Hawkins Villemarette, Scott M. Hawkins, Chris P. Villemarette, Lafayette, for Respondent.
VICTORY, J.
We granted a writ application in this negligence case to determine whether the court of appeal violated the manifest error standard of review by holding that the jury was clearly wrong in finding that the defendants had not caused the plaintiff's injuries. After reviewing the record and the applicable law, we reverse the judgment of the court of appeal and remand the case to the court of appeal to consider plaintiff's remaining assignments of error.

FACTS AND PROCEDURAL HISTORY
In the fall of 2002, Michelle Detraz received a pedicure at Virgin Nails in Lafayette, Louisiana.[1] Several days after receiving the pedicure, Ms. Detraz began to notice red bumps on her lower legs and calves. She attempted to treat the infection with over-the-counter medication, but these treatments were ineffective. The bumps developed into golf ball-sized pustules covering the backs of her legs.
On October 22, 2002, Ms. Detraz visited the emergency room where she was questioned by the on-duty nurse. The medical records from that visit state as follows: "Assessment. Twenty three (23) year old white female complains of painful red raised area to both legs/knees down. No itching. Unaware if from tanning beds or fungus. Began as small bumps." The treating physician diagnosed the pustules as a fungus and prescribed topical Nystatin, a yeast suppressant. Ms. Detraz testified that the cream did not help and her legs showed no improvement. In fact, her condition worsened, and the infection continued to spread.
Ms. Detraz sought additional treatment on November 1, 2002 from Dr. Ronald Daigle, a dermatologist. He took cultures of the infection and prescribed an antibiotic and cream. The lab reports subsequently came back negative, indicating no bacterial infection, but the antibiotics apparently *559 worked nonetheless, clearing the infection but leaving scarring on her legs. Ms. Detraz did not seek additional treatment until April 10, 2003, when she was examined by Dr. Adrian Stewart, another dermatologist. Concerning the scarring on Ms. Detraz's legs, Dr. Stewart recommended that she stop tanning, quit smoking, and use bleaching cream to lighten her scars to help them heal. She admitted that she did not quit smoking or stop tanning as directed by Dr. Stewart.
Ms. Detraz then consulted with Dr. Darrell Henderson, a plastic surgeon, on April 16, 2003. Dr. Henderson advised Ms. Detraz about the process of cosmetically repairing the scars on her legs.
Ms. Detraz filed suit against Virgin Nails and its owners, alleging that they were negligent in performing the pedicure and that their negligence caused her damages. Mr. and Mrs. Huynh, both licensed cosmetologists, own and operate Virgin Nails. Mrs. Huynh testified at trial through a translator that in cleaning the water tubs, she sprays them with the disinfectant Barbicide, then again with clean water, finally wiping the tub down with a clean towel. She testified that she leaves the Barbicide solution on for ten minutes, which differed somewhat from her deposition testimony, in which she said she sprayed the solution but did not indicate that she let the solution stand on the tub's surface and air dry.
Mr. Huynh testified that he did not administer pedicures, but that he did train his employees on how to properly clean the tub after each use. His instructions are to let the Barbicide solution sit between clients, meaning that the solution would sit for ten to fifteen minutes between clients. He also explained that he mixes a stronger Barbicide solution than necessary, assuming the stronger solution would be more effective. Both Mr. and Mrs. Huynh testified that they did not soak, or immerse, the pedicure tub in a Barbicide solution, as this would be impossible given the size of the chairs.
The Barbicide solution instructions were printed on the side of the bottle. The instructions said to mix a solution of two ounces of Barbicide for every 32 ounces of water. The instructions directed to either "apply a solution prepared as above to pre-cleaned surfaces with a cloth, mop, sponge, or coarse mist pump and thoroughly wet all surfaces," or to, "completely soak or immerse [the item] in Barbicide Solution." Mr. Huynh stated that the solution he mixed was a half cup of Barbicide and a half cup of water. Kathy Arceneaux was admitted as a cosmetology expert by the court. Ms. Arceneaux is also Ms. Detraz's employer. Ms. Arceneaux read from a standard cosmetology textbook, opining that mixing chemical cleaning solutions is ill-advised and that the failure to follow the manufacturer's recommendations regarding the appropriate proportions of solution to water and exposure times could render the product ineffective.
At trial, Ms. Detraz admitted that prior to her pedicure, she had shared a rental home with her mother that had an outdoor jacuzzi with dirt sediment at the bottom. She also moved into an apartment complex with a public swimming pool in September 2002. Immediately prior to her pedicure at Virgin Nails, she was employed cleaning tanning beds. At the time of her pedicure, she was employed as a receptionist at a different nail salon. Ms. Detraz testified that she witnessed the technician spray the Barbicide on the tub and that she wiped it off after only 15 seconds.
Dr. Daigle was the only doctor testifying at trial who saw plaintiff while the infection was active, and the cultures he took were returned as inconclusive. He was *560 able to determine that the infection is a type of staph infection that is ubiquitous in Louisiana. In his opinion, there was no way to determine where Ms. Detraz contracted this staph infection, stating that even a mosquito bite could have exposed her to this type of infection. Dr. Stewart also testified that it was impossible to determine what caused the staph infection in this case, identifying numerous events as potential causes.
Dr. Henderson identified the pathogen causing plaintiff's condition as staphylococcus aureus, which is a bacteria that is commonly found on human skin and linings of the mouth and nose and that can cause actual infection and disease, particularly if there is an opportunity for the bacteria to enter the body. According to the medical records, Ms. Detraz told him that the "filter on water tank on pedicure chairs had not been cleaned." She further told him that she had a "cut on right leg from shaving" on the day of the pedicure. He suggested that, based on this reported history, the infection could have been caused by the pedicure.
Following a four-day jury trial, the trial judge gave instructions on the law and provided the jury with a jury verdict form, both of which contain the issues which form the crux of the issues before us. Specifically, included in the jury charges was the "Housley presumption"[2] which stated as follows:
In a personal injury suit the test for determining the causal relationship between the incident in question and the subsequent injury is whether the plaintiff proved through medical testimony that it was more probable than not that the subsequent injuries were caused by the accident, in this case, a pedicure. A plaintiff may be aided in establishing this burden by the legal presumption that a medical condition producing disability is presumed to have resulted from a accident if, before the accident, the injured person was in good health, but shortly after the accident, the disabling condition manifested itself  providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition. In order to defeat this presumption, the defendant must show some other particular incident caused the injury.
Further, the jury verdict form asked the following questions: "Do you find by a preponderance of the evidence that the Huynhs or employees of Virgin Nails were negligent in the pedicure services at issue?" and "Do you find that the negligence of the Huynhs or employees of Virgin Nails was a cause of the injuries sustained by Michelle Detraz?"
The jury returned a verdict favorable to the defendants, answering "Yes" to the first question regarding whether the defendants were negligent in performing the pedicure but answering "No" to the second question regarding whether this negligence caused Ms. Detraz's injuries.
Ms. Detraz appealed the jury verdict, and the Third Circuit reversed in a 3-2 *561 decision. Detraz v. Lee, 2004-988 (La. App. 3 Cir. 4/13/05), 900 So.2d 1099. Initially, the court of appeal observed that the jury verdict form was awkwardly worded because it asked the jury to determine negligence and causation separately. Id. at 1103-04. Citing this Court's previous decision in Fowler v. Roberts, 556 So.2d 1 (La.1989), the appellate panel found that causation was one of the five elements of negligence, thus is was counterintuitive for the jury to find negligence but no causation. Id.
Further, without mentioning that the jury had been given the "Housley presumption" and ultimately found lack of causation, the court of appeal conducted an independent review of the record to determine if the presumption applied to prove causation. Id. at 1104. Based on Dr. Henderson's testimony that the unsanitized tub was the cause of the infection, the court of appeal found that the presumption had been established and that the burden then shifted to defendants to "persuade the trial court that it is more probable than not that the injury did not result from the accident." Id. at 1107-08. The court of appeal found that defendants "did not provide satisfactory evidence of an intervening cause that would destroy the casual link between the pedicure and the infection" Id. at 1108.
Although the court of appeal correctly noted that whether the plaintiff is entitled to the "Housley presumption" is a factual issue subject to the manifest error standard of review, it reversed the jury's verdict of no causation, finding as follows:
The jury in this case was manifestly erroneous in concluding a lack of causation. The equivocal testimony of Dr. Stewart and Dr. Daigle does not detract from the strength of Dr. Henderson's testimony. Their unwillingness to adopt Dr. Henderson's perspective is not sufficient to controvert his testimony.
Id. at 1109. We granted this writ application to determine whether the court of appeal erred in reversing the jury's determination of causation. Detraz v. Lee, XXXX-XXXX (La.2/17/06), 924 So.2d 993.

DISCUSSION
Standard of Review
Louisiana courts of appeal apply the manifest error standard of review in civil cases. Hall v. Folger Coffee Co., 03-1734 (La.4/14/04), 874 So.2d 90. Under the manifest error standard, a factual finding cannot be set aside unless the appellate court finds that the trier of fact's determination is manifestly erroneous or clearly wrong. Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129, 132. In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Id.
The appellate court must not reweigh the evidence or substitute its own factual findings because it would have decided the case differently. Id.; Pinsonneault v. Merchants & Farmers Bank & Trust Co., 01-2217 (La.4/3/02), 816 So.2d 270, 278-79. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong, even if the reviewing court would have decided the case differently. Id.
We have also consistently held that causation is a factual finding which should not be reversed on appeal absent manifest error. Martin v. East Jefferson General Hosp., 582 So.2d 1272, 1276 (La.1991); *562 Smith v. State through Dept. of Health and Human Resources Admin., 523 So.2d 815 (La.1988).
The defendants argue that the court of appeal erroneously held that the jury verdict form contained legal errors which led to its independent review of the record, which ultimately led them to find that causation had been proven. The court of appeal found as follows:
The Jury Verdict Form asked the jury whether Virgin Nails was negligent in performing the pedicure. The jury answered in the affirmative. Answering this question in the affirmative, however, enfolds all five of the Fowler factors, including causation. The next Verdict Form question, however, asked the jury whether this negligence caused Ms. Detraz's injuries. The jury answered in the negative. Given their response to the first question on negligence, the jury's response on causation is counterintuitive. Because the Jury Verdict Form is awkwardly worded using the comprehensive word negligence, the crucial question is causation.
We disagree that the jury verdict form was erroneous. In Fowler, supra, this court found:
The determination of liability in a negligence case usually requires proof of five separate elements: (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element). (Emphasis added.)
Fowler, supra at 4. As seen from the above, in Fowler, this Court was not defining "negligence" but was instead defining "liability" in a negligence case. "Negligence" has been defined by this Court as follows: "conduct which falls below the standard of care established by law for the protection of others against an unreasonable risk of harm." Dobson v. Louisiana Power and Light Company, 567 So.2d 569 (La.1990) (citing Restatement (Second) of Torts, § 282 (1965)). Thus, the court of appeal erred in ruling that a finding that the defendants were negligent in performing the pedicure "enfolds all five of the Fowler factors, including causation." Further, not only was there no error in the actual jury verdict form, the jury was correctly instructed on the law and all of the elements of liability in this negligence case.[3] Thus, we find no legal error in the jury verdict form which would entitle the court of appeal to disregard the manifest error standard of review.
In reviewing the jury's finding of lack of causation, the court of appeal applied the "Housley presumption" to this case and essentially undertook a de novo review of the record to find that plaintiff had proved causation using that presumption. However, causation and the application of the "Housley presumption," if it even applies in this case to assist this plaintiff in proving *563 causation,[4] is a factual issue. The jury did actually consider this case after being instructed on the potential applicability of the "Housley presumption."[5]
Having been given the Housley instruction, the jury made the factual determination that defendants' negligent conduct did not cause plaintiff's injuries. Thus, they either found that plaintiff had not established the three elements necessary for the application of the "Housley presumption," most likely that "the medical evidence shows there to be a reasonable probability of a connection between the accident and the disabling condition" or that the presumption did apply, but that defendants proved some other factor caused her injuries. Either way, the application of the "Housley presumption" is a factual issue as is the determination of causation, both of which are subject to the manifest error standard of review. Accordingly, the only issue before us is whether the jury's finding of no causation is supported by a reasonable factual basis in the record.
After reviewing the record in this case, we have determined that the appellate court erred when it improperly substituted its own judgment in place of the jury's determination of the facts. The record is replete with testimony and evidence on which the jury could have made a reasonable determination of the facts. Dr. Stewart and Dr. Daigle, both dermatologists, testified that there was no way to determine the cause of the staph infection. Dr. Daigle was the only doctor to testify at trial who saw the active infection on plaintiff's legs. Specifically, counsel asked Dr. Daigle if he could, "identify the actual source of that staph, of that infection." Dr. Daigle responded, "[t]here's no way to determine where it came from. . . . Anything that traumatizes the skin is going to allow an organism access to you, any organism that is infectious." He informed the jury of the ubiquitous nature of staph, that it is on pens, eyeglasses, and on human skin, and that a mosquito bite could have caused the break in the skin and the transmission of the infection. Plaintiff claimed she had shaved her legs the morning of her pedicure, and Dr. Daigle said a razor cut, bumps or rash would allow for auto-inoculation. Dr. Stewart[6] informed the jury that the staph infection could have been "initiated by a pedicure that was done," by a tanning bed that was not appropriately sterilized, or by shaving her legs, and that sometimes "it just happens for no rhyme or reason." Dr. Stewart concluded, "I think it's impossible to say." Finally, when she initially reported to the emergency room, she did not inform the nurse that she had recently had a pedicure, with the report stating that it was unclear if a fungus or a tanning bed caused the infection. Thus, the jury was given a clear sense of the nature of staph, and the impossibility of determining where the infection was contracted in this case. Their determination that the plaintiff did not carry her burden of proving causation is fully supported by the record.
Furthermore, the majority at the appellate court reversed the jury verdict based on the testimony of Dr. Darrell Henderson, a plastic surgeon who never saw, nor treated plaintiff's infection, who is not a dermatologist, and who did not *564 even examine the plaintiff until approximately seven months post-infection. Counsel asked Dr. Henderson to make a determination within a reasonable medical probability what caused plaintiff's infection and subsequent scarring. Dr. Henderson stated that the infection was caused by bacteria contamination in the water of the pedicure tub, and that the moist environment would be more conducive to the growth and incubation of the bacteria. However, this conclusion was based solely on what had been reported to him by plaintiff, i.e., that the filters on the water tanks were dirty and that she had a cut on her leg at the time of the pedicure from shaving that morning. However, whether the tubs had been properly cleaned was disputed and further, Mr. Huyng testified that the pedicure tubs did not even have filters. In addition, Dr. Henderson was not advised on any other activities undertaken by plaintiff that may have caused the staph infection.
Further, the testimonies of Dr. Daigle and Dr. Stewart clearly conflict with the testimony of Dr. Henderson. When there are different theories presented to the fact finder for their consideration, the fact finder's credibility determination between the two plausible theories shall not be disturbed on appeal. Cheairs v. State ex rel. Department of Transp. and Development, 03-0680 (La.12/3/03), 861 So.2d 536, 546. Credibility determinations, including evaluating expert witness testimony, are for the trier of fact. Sportsman Store of Lake Charles, Inc. v. Sonitrol Security Systems of Calcasieu, Inc., 99-0201, p. 6 (La.10/19/99), 748 So.2d 417, 421. The jury's determination that the defendant acted negligently but did not cause the plaintiff's injuries is entitled to great deference on appeal and is supported by a reasonable factual basis in the record.

CONCLUSION
In this case, after a four-day trial, the jury found that the defendants were negligent, but that the negligence did not cause the plaintiff's injuries. This finding was clearly supported by a reasonable factual basis in the record. Thus, the court of appeal erred in reversing this ruling under the manifest error standard of review.

DECREE
For the reasons stated herein, the judgment of the court of appeal is reversed and the case is remanded to the court of appeal to consider the plaintiff's remaining assignments of error.[7]
REVERSED AND REMANDED.
JOHNSON, J., dissents and assigns reasons.
VICTORY, J., additionally concurs with reasons.
KNOLL, J., dissents and assigns reasons.
JOHNSON, Justice, dissents and assigns reasons.
I respectfully dissent. In my opinion, the appellate court correctly reversed the judgment of the trial court and held that Plaintiff Michelle Detraz had proven damages and causation and that as a result, *565 the trial court's holding was manifestly erroneous.
During trial, Ms. Detraz presented the jury with evidence that Virgin Nails did not follow appropriate procedures for sanitizing its equipment before each pedicure. The trial court instructed the jury on the elements of negligence, then instructed the jury that Ms. Detraz was entitled to a presumption of causation if the jury found the three factors set forth by this Court in Houseley v. Cerise, 579 So.2d 973(La.1991). The factors that the trial court concluded in its instructions were:
The Plaintiff must prove that she was in good health prior to the accident at issue. Second, she must show that subsequent to the accident, symptoms of the alleged injury appeared and continually manifested themselves afterwards. And third, she must demonstrate through evidence a reasonable possibility of causation between the accident and the claimed injury.
After a trial on the merits, the jury concluded that Virgin Nails was negligent in sanitizing its pedicure equipment, but the negligence did not cause Ms. Detraz's injuries. Ms. Detraz appealed the decision.
The court of appeal found that Ms. Detraz provided evidence which met all three of the Housley elements. The court of appeal concluded that since Virgin Nails was unable to rebut the presumption of causation, it's actions were the cause of Ms. Detraz's injuries.
In Fowler v. Roberts, 556 So.2d 1(La.1989), this Court set forth the standard for assessing liability for damages. The plaintiff is required to prove the following:
(1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element).
(2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element).
(3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element).
(4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element)
(5) proof of actual damages (the damages element). Id. at p. 4.
Cause-in-fact is generally a "but for" inquiry, which tests whether the accident would or would not have occurred but for the defendant's substandard conduct. Id. Whether the defendant's conduct was a substantial factor in bringing about the harm, and thus, a cause-in-fact of the injuries, is a factual question to be determined by the fact finder.[1]Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305, 1310. This Court has also held that causation is a factual determination. Lasyone v. Kansas City Southern R.R., 2000-2628 (La.4/3/01), 786 So.2d 682.
The Defendant contends that the court of appeal erred in concluding that a finding of negligence includes a finding of causation. Virgin Nails argues that the court of appeal misinterpreted Fowler, supra., in that it failed to properly differentiate between the determination of liability in a negligence case and the definition of negligence itself. Virgin Nails contends that the court of appeal confused and substituted negligence for the term liability.
*566 Negligence is defined as "conduct which falls below a standard of conduct established by law for the protection of others against an unreasonable risk of harm." Dobson v. Louisiana Power and Light Company, 567 So.2d 569(La.1990); Joseph E. Lee, III, A Return to Negligence or Something More "Proving Knowledge in Strict Liability" Cases in Louisiana under Civil Code Article 2317.1, 59 La. L.Rev. 1225(1999); Myers v. Dronet, 801 So.2d 1097(La.App. 3 Cir.2001).
In Dobson, supra., this court noted the following:
The generally accepted view is that negligence is defined as conduct which falls below the standard established by law for the protection of others against an unreasonable risk of harm. Restatement (Second) of Torts, § 282 (1965); Harper, James & Gray, supra § 16.1 at 381-382; Prosser & Keeton on Torts, § 31 (5th ed.1984).FN3
The test for determining whether a risk is unreasonable is supplied by the following formula:
The degree of care demanded of a person by an occasion is the resultant of three factors: the likelihood that his conduct will injure others, taken with the seriousness of the injury if it happens, and balanced against the interest which he must sacrifice to avoid the risk. L. Hand, J. in Conway v. O'Brien, 111 F.2d 611, 612 (2d Cir.1940).
If the product of the likelihood of injury multiplied times the seriousness of the injury exceeds the burden of the precautions, the risk is unreasonable and the failure to take precautions or sacrifice the interest is negligence. Id. See also, Levi v. SLEMCO[, 542 So.2d 1081 (La. 1989)], supra; Allien v. Louisiana Power & Light Co., 202 So.2d 704 (La.App. 3d Cir.1967); Harper, James & Gray, supra § 16.9.
Defendant contends that in order for Ms. Detraz to recover, it is simply not enough to prove negligence. Causation must be proven separately from negligence, citing Wainwright v. Leary, 623 So.2d 233,236 (La.App.Cir.1993). Defendant argues further, that negligence, causation, and injury are all separate and distinct elements of a finding of legal liability. All three elements must be present in order to find legal liability.
Dr. Ronald Daigle, a Dermatologist who successfully treated Ms. Detraz, was presented as Defendant's Expert Witness. He testified that her chief complaint was of lesions-eruptions on her lower legs. Dr. Daigle testified that his clinical impression was that Ms. Detraz had folliculitis furunculosis with abscesses of her lower extremities. He concluded that these lesions-eruptions were compatible with a staphylococcus infection and treated Ms. Detraz's condition as a bacterial infection and elected to treat her initially with Omnicef, which is a Cephalosporin. He testified that he provided Ms. Detraz with Bactroban Cream, which is a topical antibiotic used to treat staph. When Ms. Detraz showed no improvement, he prescribed Bacterim DS, a sulfa based antibiotic used for cutaneous infections.
Dr. Daigle originally offered no opinion as to what caused the staph infection to Ms. Detraz. However, on cross-examination, Dr. Daigle, when asked to draw a hypothesis on whether Ms. Detraz could have contracted the staph infection from the pedicure, testified as follows:
I think you can draw a time line between the fact that this infection arose subsequent to that incident and this is the resultant outcome of the infection. The infection that I saw in November was nodular and pustular and could have resulted in this type of outcome. (Deposition *567 taken on May 7, 2003 of Dr. Daigle, page 29, lines 12-25 and page 30 lines 1-3)
In his case in chief, Defendant presented the testimony of Dr. Adrien Stewart, a Dermatologist who also treated Ms. Detraz. Dr. Stewart testified through deposition that she first saw Ms. Detraz on April 10, 2003. When asked by Defendant's counsel whether she could give any medical opinion within a degree of certainty as to whether or not it was more likely that this infection was caused by a pedicure or some other cause, Dr. Stewart responded as follows:
I don't believe there's any way you could say. I mean you could pick it up off a tanning bed that was inappropriately sterilized. You could get it from, say, shaving your legs. You could get it from, you know, a  initiated by a pedicure that was done (sic). I think it's impossible to say. (Deposition of Dr. Andrien Stewart taken on November 5, 2003, page 17, lines 12-18).
On cross-examination by Plaintiff's counsel, Dr. Stewart reiterated that there were many possible causes for this staph infection including using tanning beds, and shaving your legs. Although she conceded that "if there was a previous staph infection in the water and the patient had an active portal of entry, an injury to the skin, then theoretically that contaminated water might, in a susceptible person, produce a staph infection." (Deposition of Dr. Andrien Stewart taken on November 5, 2003, page 22, lines 14-19).
The court of appeal reasoned that since the jury found the Defendant negligent in answering the first question on the jury form, then the jury concluded that all five elements as outlined in Fowler must be present. The court of appeal determined that the jury's answers to the second interrogatory concerning causation conflicted with the jury's answer to the preceding question.
The court of appeal concluded that Housley creates a rebuttable presumption of causation once Ms. Detraz had proven:(1) that she was in good health prior to the accident at issue;(2) that her symptoms appeared subsequent to the accident and continued to manifest afterwards;(3) through medical, circumstantial, and common knowledge, plaintiff showed the reasonable possibility of causation between the accident and the claimed injury.
VICTORY, J., additionally concurring.
I write separately to express my view that the lower courts erred in applying the presumption expounded in Behan v. John B. Honor Co., 143 La. 348, 78 So. 589 (La.1917) and Lucas v. Ins. Co. of N. Am., 342 So.2d 591, to this case. These early cases applied a presumption to aid the plaintiff in proving causation in workers' compensation cases where a work place accident caused a dormant injury to become symptomatic. This presumption may be appropriate in worker's compensation cases because relaxed procedural rules apply. For instance, worker's compensation judges are not bound by the technical rules of evidence and procedure in considering and deciding a worker's claim. La. R.S. 23:1317.
In my view, this Court erred in Housley v. Cerise, 579 So.2d 973 (La.1991), by applying this presumption to aid plaintiff in an ordinary negligence case. The Housley court did so without discussing the fact that the presumption had never been applied by this Court in a non-worker's compensation case. Housley erred in this regard because in negligence cases, plaintiff has the burden of proving causation, as well as all the other elements of his case. Fowler v. Roberts, 556 So.2d 1 (La.1989). The use of this presumption in an ordinary *568 negligence case impermissibly shifts the burden of proof to the defendant to show that some other particular incident caused the injury. This Court has erred twice since Housley by applying the presumption in ordinary negligence cases. See Dabog v. Deris, 625 So.2d 492, 494 (La.1993) and Maranto v. Goodyear Tire & Rubber Co., 94-2603 (La.2/20/95), 650 So.2d 757, 761 (Victory, J., not on panel).
Accordingly, I write to additionally concur in the majority opinion to express my view that the "Housley presumption" is not applicable outside the workers' compensation field. It has no place in an ordinary negligence case.
KNOLL, J., dissenting.
For the following reasons, I respectfully dissent.
A claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition. Housley v. Cerise, 579 So.2d 973, 980 (La.1991).
Although the majority opinion concludes the appellate court erred in its application of the manifest error standard of review, at 564, the majority postures its treatment of the issue of causation, suggesting the appellate court "essentially undertook a de novo review of the record to find that plaintiff had proved causation using [the Housely] presumption." At 562. See also at 561 ("the court of appeal conducted an independent review of the record to determine if the presumption applied to prove causation"); at 562-63 ("Thus, we find no error in the jury verdict form which would entitle the court of appeal to disregard the manifest error standard of review."). My review of the appellate court's opinion shows it did not conduct a de novo review. Rather, in accordance with well established directives from this Court, the appellate court reviewed the record, giving great deference to the fact finder, yet examined the record to ascertain whether those factual findings were supported by the evidence adduced. Detraz v. Lee, 04-988 (La.App. 3 Cir. 4/13/05), 900 So.2d 1099, 1108-09.
The appellate court decision shows it focused on the crucial element in this case, causation, and whether the jury properly applied the Housley presumption, an aid this Court recognized in proving causation and reaffirmed on at least two occasions. See Dabog v. Deris, 625 So.2d 492, 494 (La.1993); Maranto v. Goodyear Tire & Rubber Co., 94-2603 (La.2/20/95), 650 So.2d 757, 761. Even though the majority opinion recognizes the trial judge instructed the jury on the Housley presumption, I find it fails to apply the facts of this case within the context of Housley. Most importantly, I find the majority opinion fails to assess the jury determination on causation in light of the presumption.
In the present case, the majority opinion misconstrues Housley when it states most likely the jury found no causation because of a failure of the medical evidence to show "there to be a reasonable probability of a connection between the accident and the disabling condition." At ___; (emphasis added). Housley does not premise the finding of causation on the showing of a probable connection. To the contrary, Housley only requires that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition. Housley, 579 So.2d at 980.
*569 My review of the medical evidence shows the plaintiff carried her burden of proving causation, as aided by the Housley presumption, because the evidence, when viewed in globo, leads to only one conclusion  the negligence of the defendant caused the plaintiff's staph infection. It cannot be denied that the staph bacteria is ubiquitous in the environment. Although only Dr. Darrell Henderson testified that a causative link existed between defendants' negligence and plaintiff's infection, neither Dr. Ronald Daigle nor Dr. Adrian Stewart rejected Dr. Henderson's assessment. As observed in the appellate court decision, Dr. Daigle admitted it was possible to draw a temporal relationship between plaintiff's exposure to the bacteria at the time of her pedicure and her later symptoms. Dr. Stewart concluded it was impossible to say what caused the infection, but further told the jury the staph infection could have been "initiated by a pedicure that was done." There is neither a requirement that there be unanimity among the testimonies of the medical professionals nor that the plaintiff establish causation within a medical degree of certainty. Medicine is not an exact science and it is not unusual for medical experts to be unwilling to state unequivocally the cause of a certain malady. Wisner v. Illinois Cent. Gulf R.R., 537 So.2d 740, 745 (La.App. 1 Cir.1988), writ denied, 540 So.2d 342 (La.1989). Although there may not have been unanimity in the medical testimony, plaintiff nonetheless established a reasonable possibility of causal connection between the accident and the disabling condition.
Moreover, causation is not necessarily and exclusively a medical conclusion. Haughton v. Fireman's Fund Am. Ins. Companies, 355 So.2d 927, 928 (La.1978). The medical evidence must show that "the nature of the accident, when combined with other facts of the case, raises a natural inference through human experience that such a causal connection exists." Lubom v. L.J. Earnest, Inc., 579 So.2d 1174, 1179 (La.App. 2 Cir. 5/8/91); (emphasis added). In the present case, the facts cry out in support of the appellate court's determination that the jury manifestly erred on the question of causation and exemplify the classic application of manifest error review. First, the majority indicates no disagreement with the jury determination that the defendant negligently performed the pedicure; there was ample evidence that the defendant improperly mixed the chemicals used to clean the pedicure tub. Second, I find it most telling that plaintiff manifested symptoms within days after she immersed her legs in defendants' unsanitary tub. In this regard, it is significant that the infection began on the area of the leg where the plaintiff shaved on the day of her pedicure and only affected the immersed part of the plaintiff's legs. Thus, when I combine the medical evidence and the facts peculiar to the onset of the plaintiff's infection, I find the appellate court properly concluded the jury manifestly erred in failing to apply the Housley presumption with regard to causation.
Having found proof of causation, I find the defendant failed to adduce evidence that showed an intervening cause for plaintiff's injury. Speculation does not create a realistic alternative cause. Dabog, 625 So.2d at 495. Even though the staph bacteria may be found in common, everyday places, a fact the defendants skillfully used to cloud the issue, at least nine of the jurors were led into falsely believing that fact alone negated the presumption of causation. The appellate court recognized the error of the fact finder, refused to blindly follow that factual determination, and properly concluded the jury was manifestly erroneous in the present case.
*570 For these foregoing reasons, I would affirm the judgment of the court of appeal.
NOTES
[1] Although plaintiff's petition stated the pedicure happened on August 15, 2002, at trial she testified that based on a cancelled check written to Virgin Nails and dated September 23, 2002, she believed the correct date of the pedicure was September 23, 2002.
[2] The "Housley presumption" as set forth in Housley v. Cerise, 579 So.2d 973 (La.1991) has its root in worker's compensation suits dating to 1917. Behan v. John B. Honor Co., 143 La. 348, 78 So. 589 (La.1917) and Lucas v. Ins. Co. of N. Am., 342 So.2d 591 (La.1977). These early cases contemplated a situation in which an accident caused a dormant injury to become symptomatic. Behan, supra at 590. Housley was the first time that this Court applied the presumption of Lucas to a non-worker's compensation case. Housley, supra at 980-81. Subsequently, this Court has only considered the "Housley presumption" on two other occasions, Dabog v. Deris, 625 So.2d 492, 494 (La.1993), and Maranto v. Goodyear Tire & Rubber Co., 94-2603 (La.2/20/95), 650 So.2d 757, 761.
[3] For instance, the trial judge states in his charges that, "[t]he elements which the plaintiff must prove in this case are: (1), that the injury the plaintiff suffered was caused by the conduct of the defendant, and we refer to that as causation; second, substandard conduct, which is negligence . . ." Certainly a lay jury would have understood these charges to mean that the causation and negligence are separate issues.
[4] See the attached concurrence of the author of this opinion which expresses the view that the "Housley presumption" only applies in workers' compensation cases under certain circumstances.
[5] At trial, the trial judge told the lawyers, sua sponte, that he was considering giving a Housley instruction, which he ultimately did.
[6] Dr. Stewart's testimony was presented to the jury via video deposition.
[7] According to the court of appeal opinion, these assignments of error are: whether the trial court erred in refusing to honor the jury's request to review certain testimony after deliberation began; and whether the presence of an alternate juror in the deliberation room after the jury retired corrupted the deliberation process. Plaintiff also filed a motion to make an audiotape of certain testimony part of the record. The court of appeal stated that "[b]ecause we conclude the jury erred with respect to causation and reverse their verdict, we do not address these issues." 900 So.2d at 1101.
[1] Another technique for determining cause-in-fact is the "substantial factor" inquiry which is useful when the combined active conduct of two separate parties operates to cause harm. Malone, Rumination on Cause-In-Fact, 9 Stan. L.Rev. 60, 88-90 (1956).