964 So.2d 1008 (2007)
Debra McKEE, Individually and as Natural Tutrix of Her Minor Child, Breanna Denise Ellis
v.
WAL-MART STORES, INC. and Amy Guidry Gleason.
No. 2006 CA 1672.
Court of Appeal of Louisiana, First Circuit.
June 8, 2007.
Rehearing Denied July 9, 2007.
*1009 Donald W. Price, Baton Rouge, Allen J. Myles, Plaquemine, Counsel for Plaintiffs/Appellants Debra McKee, etc.
F. Scott Kaiser, Gregory T. Stevens, Baton Rouge, Counsel for Defendants/Appellees Wal-Mart Stores, Inc. and Amy G. Gleason.
Before: PETTIGREW, DOWNING and HUGHES, JJ.
DOWNING, J.
Debra McKee[1] appeals a summary judgment granted in favor of Wal-Mart[2] dismissing her claim for damages allegedly arising from a Wal-Mart pharmacist's failure to counsel regarding medicine prescribed for her daughter. For the following reasons, we affirm.

*1010 FACTS AND PROCEDURAL HISTORY
Ms. McKee took her child to see her pediatrician on November 10, 2003 due to sinus, allergy and related complaints. Initially, the pediatrician told Ms. McKee that he would give her daughter an antibiotic called Omnicef. He counseled Ms. McKee on the proper administration of Omnicef and gave her an instruction sheet concerning this drug. However, apparently when he realized he did not have samples, he wrote a prescription for another antibiotic called Septra DS. He did not advise Ms. McKee of the change.
Ms. McKee took the prescription to the Wal-Mart store in Zachary, Louisiana, where the pharmacist filled the prescription as written. Wal-Mart has stipulated in brief, for purposes of the motions at issue only, that it did have a duty to counsel regarding the prescription, that it breached the duty by failing to properly counsel, that had the Wal-Mart pharmacist counseled, the pharmacist would have called the pediatrician to see what he intended to prescribe, that they dispensed generic Septra DS to the child, and that the child suffered certain damages.[3] (R. p. 603)
After a hearing on Wal-Mart's motion for summary judgment, the trial court entered judgment in its favor, finding that no genuine issues of fact existed and that Ms. McKee had failed to prove Wal-Mart was negligent. Ms. McKee filed a motion for new trial, which the trial court denied after a hearing.
Ms. McKee now appeals, asserting three assignments of error, as follows:
1. The trial court erred in finding that there were no genuine issues of material fact and that the defendants were entitled to judgment as a matter of law on the issue of the defendants' negligence.
2. The trial court erred in finding that there were no genuine issues of material fact and that the defendants were entitled to judgment as a matter of law on the issue of causation.
3. The trial court erred in denying the motion for new trial due to its failure to find that its ruling on the motion for summary judgment was contradictory to the law and the evidence.

DISCUSSION

Standard of Review
In determining whether summary judgment is appropriate, appellate courts conduct a de novo review of the evidence, employing the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Osborne v. JAG Const. Services, Inc., 04-0437, p. 4 (La.App. 1 Cir. 2/16/05), 906 So.2d 601, 603, writ denied, 05-0739 (La.5/6/05), 901 So.2d 1101. Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B.
If the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate *1011 all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966 C(2).

Analysis
Here, Ms. McKee claims that Wal-Mart is liable for negligence in that it failed to counsel her pursuant to a statutory duty, which resulted in damages to her daughter. Generally, proof of liability for negligence includes five elements:
(1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element);
(2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element);
(3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element);
(4) proof that the defendant's substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and
(5) proof of actual damages (the damages element).
See Detraz v. Lee, 05-1263, p. 8 (La.1/17/07), 950 So.2d 557, 562. Wal-Mart has stipulated to the first, second, and fifth element for the purposes of these motions. Accordingly, we limit our review of the trial court's judgment to the third and fourth elements: whether there exist questions of fact regarding whether Wal-Mart's substandard conduct was a cause-in-fact of Ms. McKee's daughter's injuries and whether the substandard conduct was a legal cause of her injuries. And because of our disposition of the fourth, legal cause, element, we pretermit discussion of the cause-in-fact element.

LEGAL CAUSATION
In Perkins v. Entergy Corp., 98-2081, p. 31 (La.App. 1 Cir. 12/28/99), 756 So.2d 388, 410, this court explained that a determination of "cause" in a legal causation analysis demands inquiry into "whether a legal standard of care exists and requires delving into policies for and against extending the asserted legal standard of care to protect the particular plaintiff against the particular harm. (Citations omitted.)" The determination of legal cause is a purely legal question. Id. "The ease of association of the injury with the rule of conduct that is urged, however, is the proper inquiry." Id. "[L]egal cause can be evaluated on the basis of foreseeability and ease of association." Id. "[T]he extent of protection owed a particular plaintiff is determined on a case-to-case basis to avoid making a defendant an insurer of all persons against all harms." Id.
1. Pertinent legal standard
The duty Wal-Mart allegedly breached is the duty of its pharmacist to counsel Ms. McKee regarding a prescription it dispensed for her daughter. The parameters of this duty are set forth in La. Admin. Code 46:LIII:1115.[4] A copy is attached to this opinion as Appendix A.[5]
*1012 2. Foreseeability
No evidence in the record filed in connection with the motion for summary judgment suggests that it was dangerous or improper for Wal-Mart to dispense Septra DS to Ms. McKee's child. At worst, Ms. McKee's medical expert states that such prescription was "not a prudent choice." Other evidence asserted that the prescription for generic Septra DS was appropriate, though perhaps not the first choice for treatment. And no evidence suggests that the side effects suffered from the prescription are common or expected. Rather, the only evidence presented in this regard is that the child's reaction was extremely rare. And she had taken the medication before.
While complications are foreseeable from taking any medication, it does not seem to be reasonably foreseeable that the rare harm suffered here would result from the failure to counsel a patient, which resulted in the dispensation of an apparently appropriate antibiotic. This is particularly so where Wal-Mart's regulated duty was to inform the patient of "common severe side or adverse effects or interactions and therapeutic contraindications that may be encountered, including their avoidance, and the action required if they occur." (Emphasis added.) La. Admin. Code 46:LIII:1115D(4).
3. Ease of Association
Nor do we find it easy to associate Wal-Mart's failure to counsel Ms. McKee with the development of a rare side effect from an allegedly incorrect, nevertheless appropriate, antibiotic. By its own terms, the duty imposed does not require that a patient be counseled regarding rare or remotely possible side effects. Id.
4. Public Policy
The stated purpose of a pharmacist's duty to counsel is "to improve therapeutic outcomes by maximizing proper use of prescription medications and devices."[6] Ms. McKee only argues that had she been counseled, she would have been alerted, and the pharmacist would have called the doctor, who would have realized his mistake and corrected the prescription to prescribe Omnicef. While we recognize that a jury could believe this scenario, it does not appear to us that the purposes underlying the regulated duty for pharmacy counseling encompass this factual scenario in which Ms. McKee would have been alerted to a possible error.
5. Legal Cause
Accordingly, under the undisputed facts of this case, based on foreseeability, ease of association, and consideration of public policy, we conclude that Ms. McKee has failed to show that she can establish an essential element of her case  legal causation. Therefore, the trial court did not err in finding that Wal-Mart was not negligent.[7] Further it did not err in finding *1013 that there were no disputed issues of material fact to preclude entry of summary judgment.
Ms. McKee's first and second assignments of error are without merit.

DENIAL OF NEW TRIAL
We pretermit consideration of the third assignment of error addressing the denial of Ms. McKee's motion for new trial. Following Carpenter v. Hannan, 01-0467, p. 4 (La.App. 1 Cir. 3/28/02), 818 So.2d 226, 228, citing Morrison v. Dillard Department Stores, Inc., 99-2060, p. 2 (La.App. 1 Cir. 9/22/00), 769 So.2d 742, 744, the established rule in this circuit is that the denial of a motion for new trial is an interlocutory and non-appealable judgment.[8] The Louisiana Supreme Court, however, has instructed us to consider an appeal of the denial of a motion for new trial as an appeal of the judgment on the merits, when it is clear from appellant's brief that the appeal was intended to be on the merits. Carpenter, 01-0467 at p. 4, 818 So.2d at 228-229. Thus, we are to review the judgment on the merits and not the judgment denying a new trial, which we have done.

DECREE
For the foregoing reasons, we affirm the judgment of the trial court granting summary judgment in favor of Wal-Mart and against Ms. McKee, dismissing her claims with prejudice. Costs of this appeal are assessed against Ms. Debra McKee.
AFFIRMED.
PETTIGREW, J., concurs in the result.
HUGHES, J., concurs.

APPENDIX A
46 LA ADC Pt LIII, § 1115
La. Admin Code. tit. 46, pt. LIII, § 1115
LAC 46:LIII.1115

This document has been amended. Use UPDATE. See SCOPE for more information.
LOUISIANA ADMINISTRATIVE CODE TITLE 46. PROFESSIONAL AND OCCUPATIONAL STANDARDS PART LIII. PHARMACISTS CHAPTER 11. PHARMACIES

Current through November 1, 2001
§ 1115. Patient Counseling
A. Patient Counseling  the effective communication by the pharmacist of information, as defined in this regulation, to the patient or caregiver, in order to improve therapeutic outcomes by maximizing proper use of prescription medications and devices.
B. Sign. The use of a sign to alert patients that patient counseling services are available may be appropriate for informing patients of this service, but does not satisfy the requirements for counseling, since many patients may not be able to read or understand the sign.
C. Waiver. No pharmacist or pharmacy may solicit or encourage blanket waivers for patient counseling; however, nothing in this regulation shall prohibit the patient or *1014 caregiver from refusing counseling on each prescription.
D. Minimum Requirements. At a minimum, the pharmacist should be convinced that the patient or caregiver, as a result of counseling, is informed of the following:
1. the name and description of the medication;
2. the dosage form, dosage, route of administration, and duration of drug therapy;
3. special directions and precautions for preparation, administration, and use by the patient;
4. common severe side or adverse effects or interactions and therapeutic contraindications that may be encountered, including their avoidance, and the action required if they occur;
5. techniques for self-monitoring drug therapy;
6. proper storage;
7. prescription refill information; and
8. action to be taken in the event of a missed dose.
E. The pharmacist may supplement oral information with written information but may not use written information alone to fulfill the counseling requirement.
F. Patient Information
1. In order to effectively counsel patients, the pharmacist shall be responsible to ensure that a reasonable effort is made to obtain, record, and maintain the following patient information, if significant, but not limited to:
a. name, address, telephone number;
b. date of birth (age), gender;
c. medical history;
i. disease state(s);
ii. allergies/drug reactions;
iii. current list of medications and devices.
2. This information may be recorded in the patient's manual or electronic profile, or in any other system of records and may be considered by the pharmacist in the exercise of his professional judgment concerning both the offer to counsel and content of counseling.
3. The absence of any record of a failure to accept the pharmacist's offer to counsel shall be presumed to signify that such offer was accepted and that such counseling was provided.
G. Communication to the Patient
1. A pharmacist should counsel the patient or caregiver "face-to-face," when possible or appropriate. If it is not possible or appropriate to counsel the patient or caregiver "face-to-face", then a pharmacist should counsel the patient or caregiver by using alternative methods. The pharmacist must exercise his professional judgment in the selection of an alternative method.
2. Patient counseling, as described in this regulation, should also be provided for outpatient and discharge patients of hospitals and institutions where applicable.
3. Patient counseling, as described herein, shall not be required for inpatients of a hospital or institution where a nurse or other licensed health care professional is authorized to administer the medication(s); and
4. The pharmacist shall maintain appropriate patient-oriented reference materials for use by the patient upon request.
AUTHORITY NOTE: Promulgated in accordance with R.S. 37:1178.
HISTORICAL NOTE: Promulgated by the Department of Health and Hospitals, *1015 Board of Pharmacy, LR 23:1311 (October 1997).
NOTES
[1] Ms. McKee filed the original petition and this appeal individually and on behalf of her minor child, Breanna Denise Ellis.
[2] The defendants/appellees include Wal-Mart Stores, Inc., Wal-Mart Associates, Inc., Wal-Mart Louisiana, L.L.C., and Amy Guidry Gleason, the specific pharmacist against whom allegations are made.
[3] We do not evaluate whether these stipulations are properly supported by evidence, but we do accept them for purposes of our review here. We note that the child apparently developed Stevens-Johnson Syndrome, which progressed to toxic epidermal necrolysis, subsequent to taking Septra DS.
[4] The regulation recites that it was promulgated pursuant to former La. R.S. 37:1178. The subject matter of this statute now appears in La. R.S. 37:1182. See Disposition Table preceding La. R.S. 37:1161.
[5] Ms. McKee cites La. Admin. Code 46:LIII:517 as the proper regulation. However, while this regulation was promulgated in October 2003, it did not become effective until January 1, 2004, nearly two months after the Septra DS was dispensed. The regulations are similar.
[6] Louisiana Admin. Code 46:LIII:517A, effective January 1, 2004, states more simply that the purpose of patient counseling is "to ensure proper use of drugs and devices." See also La. R.S. 37:1164(31).
[7] We observe that the trial court was technically incorrect. The supreme court explains the distinction between "negligence" and "liability in a negligence case" in its opinion in Detraz. It explains: "`Negligence' has been defined by this Court as follows: `conduct which falls below the standard of care established by law for the protection of others against an unreasonable risk of harm.'" Detraz, 05-1263 at p. 8, 950 So.2d at 562. Liability for negligence is determined as outlined above. Id.
[8] By 2005 La. Acts No. 205, effective January 1, 2006, La. C.C.P. art.2083 was amended to remove the longstanding provision that interlocutory judgments that "may cause irreparable harm" are appealable. An interlocutory judgment is now appealable only when expressly provided by law. Accordingly, the denial of a new trial is not generally appealable.