CLARENCE E. McMANUS, Judge.
12Plaintiff filed suit against Sears, Roebuck and Co. for injuries she received when performing maintenance while an employee of Management Cleaning Services. During the course of the proceedings Liberty Mutual Insurance Company, the employer’s workers compensation carrier, filed a petition for intervention, alleging that it had paid to plaintiff $13,069.32 in indemnity benefits and $41,030.20 in medical benefits. After trial on the merits, the trial court found that plaintiff sustained a twelve month injury and it awarded total damages in the amount of $24,000.00. The court further found that intervenor was entitled to recover workers compensation and medical benefits, which exceeded the award of damages, subject to reduction for attorney fees to plaintiffs *901 counsel. The trial court rendered judgment against Sears and in favor of Liberty-Mutual in the amount of $16,000.00 and for plaintiffs counsel in the amount of $8,000.00.
Plaintiff appeals from this judgment of the trial court, alleging that the trial court erred in failing to find that she was totally disabled as a result of her injuries and that the quantum awards was inadequate. Defendant, Sears filed an answer, alleging that the trial court erred in finding liability for the accident. For the reasons that follow, we affirm the decision of the trial court.
| {The Accident
The accident occurred on May 10, 2002. Carl Crittenden, employed by Sears as a shipping clerk associate, testified that he was moving a cart loaded with various boxes of merchandise from the shipping area to the sales floor. The boxes were placed on a flat that was approximately 2/£ feet wide and 4 feet long. The flat had four wheels and a handle in the front middle, similar to a child’s wagon. There were no sides on the flat. The flat was loaded approximately four feet high with boxes of various sizes; the heavier ones located on the bottom and the lighter ones on the top. There was no strap of any kind securing the boxes to the flat.
There was an aisle from the receiving area to the sales floor. Partway down the aisle was an opening with two doors. Located at the two doors was a threshold, and the floor on the sales area side of the threshold was about1/1 or5,8 inch higher than the floor on the other side of the threshold into the receiving area. Near to the doors on the sales floor side, to the left, was a corridor leading into the bathrooms. The door to the ladies room was in the corridor, approximately two feet from the aisle.
Mr. Crittenden testified that on the date in question he was pulling the flat into the sales area while another Sears’ employee, Bobby Cosgrove, held the doors for him. He was in front of the flat, facing away with the flat behind him. He cleared the front wheels, and then the back wheels over the threshold. After the back wheels cleared, he heard something hit the floor. He stopped the flat, and noticed that a box had fallen off so he picked it up. Mr. Cosgrove picked up one or two boxes on the other side of the flat. After he picked up the box, Mr. Crittenden saw the plaintiff in the bathroom corridor on the other side of the flat, (on Mr. Cosgrove’s side). At first she did not say anything, so he assumed she had not |4been hit. She then told him that she was hit by the boxes, to which he responded that he did not stack the flat. At trial Mr. Crittenden stated that he did not know which of the boxes fell off or where they were located on the flat. After plaintiff stated that she was hit by the boxes, Mr. Cosgrove told her to fill out an accident report. Mr. Crittenden stated that he did not fill out an accident report, and no one from Sears asked him what had happened.
Plaintiff testified that on that date of the accident she held three jobs, one of them being with Management Cleaning Controls. Her duties were to clean various places in the store, including the Ladies and Men’s room near the shipping and receiving area. On the date of the accident, she had finished cleaning the ladies room, and was starting to pull her cart, on the other side of the ladies room door from the aisle, when she saw Mr. Crittenden. She stopped, about one foot from the aisle to allow him to pass. She had her back to the hallway. Three boxes came off the flat and struck on her back and calves. Two other boxes fell, but did not strike her. She had initial pain from the blow, but did not experience any lingering pain that day. *902 Ms. Ennis stated that she went to the security office and filled out incident forms, one for Sears and one for Management Cleaning and then, because she had finished, she left the store. The next morning when she awoke, she experienced pain, starting at the belt line in her back and traveling down her left leg into her calf area. At the time of the accident, in addition to her job with Management Cleaning, she was also employed part time by the Jefferson Parish School Board as a food worker, and as a nighttime sitter for an elderly gentleman.
Walter Dominique, Loss Prevention Manager for Sears, took plaintiffs’ statement. He asked her if she needed medical help, to which she responded that she did not. She was upset because Mr. Critten-den had not apologized to her. Mr. Dominique then spoke with Mr. Crittenden, who stated that he did not see a box | Bfall, but that he did see the box on the floor. He also spoke with Mr. Cosgrove, but does not recall if Cosgrove told him how many boxes fell. Mr. Dominique stated that Sears had a safety manual, but that it did not instruct on how to load a flat.
Margot Lerille testified that she worked in loss prevention at the time of the accident. She opened the store doors in the morning, and would talk to plaintiff. After the accident plaintiff spoke with her and said that she (plaintiff) was not really hurt, but was upset because Mr. Crittenden did not apologize.

The Injury

Plaintiff initially sought treatment with her internist, Dr. Nguyen, on May 16, 2002, who ordered a CT scan. The test was conducted on May 30, 2002, and showed multilevel degeneration at L4-5 and L5-S1, with spondylolisthesis at L4-5 and stenosis of the central canal. Dr. Nguyen diagnosed post contusion low back pain, degenerative low back disease, grade I spondylolisthesis and spinal stenosis. Plaintiff was prescribed medication and physical therapy. She was told to stay out of work for four weeks, except her sedentary sitting job.
Plaintiff testified that she went to the prescribed therapy, but did not improve. On August 13, 2002, she began treatment with Dr. Kewalramani, a neurologist. At that time, she complained of pain and discomfort in the lumbar region with intermittent radiation along the lower extremities. He diagnosed lumbar musculi-gamentous pain syndrome and lumbar mechanical dysfunction. He prescribed pain medication, and heat packs, and scheduled a follow-up visit. His report of that visit states that “Based on history provided by the patient onset of her problems was around May 10, 2002 when she was working and multiple boxes fell from a flat cart and struck her.”
During the course of her treatment with Dr. Kewalramani, plaintiff also underwent an EMG and nerve conduction study. The results were consistent with | filumbar radiculopathy. Dr. Kewalramani also considered the result of the MRI previously conducted. As of March, 2003, plaintiff continued to be symptomatic, and therefore Dr. Kewalramani recommended that she consult a neurosurgeon.
In June of 2003, plaintiff consulted with Dr. Stephen Pribil, a neurosurgeon. He viewed the MRI results and diagnosed Grade 1 spondylolysthesis at L4-5 with very severe lumbar stenosis, and disc herniation and collapse at L5-S1. He recommended that plaintiff undergo a lumbar interbody fusion at L4-5 and S-l levels. The surgery was performed. At six months post surgery, on February 3, 2004, Dr. Pribil’s examination revealed that the plaintiff complained of achiness, stiffness and soreness. Her strength was good. He qualified her totally temporarily dis- *903 abler! for six additional months. At eleven months post surgery, plaintiff complained of some back pain, but no more leg pain. Dr. Pribil scheduled a Functional Capacity Examination. On August 31, 2004, Dr. Pribil noted that plaintiff was a little over one year post surgery, and that the results of the surgery were good. The FCE showed that she could lift 20 pounds, and that she should limit twists, bends and stoops. Dr. Pribil concluded that plaintiff had reached maximum medical improvement, and he released her to light duty. He opined that she could not return to her previous employment with the cleaning service. Dr. Pribil’s reports introduced at trial do not link the necessity for surgery with the accident at Sears, although at trial plaintiff testified that Dr. Pribil told her the surgery was necessary because of the injuries sustained in the accident.
Dr. Nutik performed an Independent Medical Examination of plaintiff and reviewed reports sent to him. He concluded that, based on the history plaintiff gave him, that she sustained a mild soft tissue injury. In his report, Dr. Nutik stated that it was his understanding that the boxes weighed less than seven pounds. However, there is no evidence to show the size and weight of the boxes at issue. 17Pr. Nutik did note that the plaintiff did not fall when she was struck by the boxes, and he opined that without falling, he would not have anticipated any involvement at the low back.
At trial, defendant introduced a medical history intake form that plaintiff filled out in February of 2000, almost two years before the accident. On the form, plaintiff checked that she experienced back pain. Margot Lerille testified that sometimes when she would see the plaintiff coming to work, plaintiff would walk differently, “crooked with a little limp.” On those occasions, Ms. Lerille would inquire about plaintiffs back. Plaintiff testified at trial that the pain experienced was just soreness and fatigue from manual labor, and not a resulting from any injury.

Appeal

After trial on the merits, the court found that Sears was liable for the plaintiffs injury, stating that “Mr. Carl Critten-den testified that boxes would not fall off the cart if properly stacked, which is also a matter of common sense.” In answer to this appeal, Sears alleges that the trial court erred in finding that it was liable for the accident. Sears argues that there is no liability because the accident was inevitable or unavoidable, and further that it breached no duty to plaintiff.
LSA-C.C. art. 2315 provides in pertinent part that “Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.” LSA-C.C. art. 2316 further states that “Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.”
However, the doctrine of avoidable or inevitable accident relieves a person of liability as long as that person shows that he was in no way to blame for the accident. Seals v. Morris, 410 So.2d 715 (La.1981); Nalle v. State Farm Fire & Cas. Co., 97-441 (La.App. 3 Cir. 10/8/97), 702 So.2d 854, writ denied, 97-2832 (La.2/13/98), 706 So.2d 994.
While Mr. Crittenden testified that the flat was loaded correctly, he also stated that the flat was stacked four feet high, and that all the boxes were not the same size. He further admitted that the boxes were not secured to the flat in any way. Sears argues that Crittenden “followed all applicable safety policies in checking for the safety and security of the flat”, and that it was unavoidable that the boxes *904 would fall. We do not agree. If the boxes were properly stacked and secured, they would not fall off the flat. We find no error in the trial court determination that Sears was liable for the accident.
Plaintiffs appeal alleges that the trial court erred in concluding that she suffered only a twelve month soft tissue injury, and further that the trial court’s award of $24,000.00 in total damages is inadequate.
The trial court found that, while the plaintiff was injured in the accident, that injury was a 12 month soft-tissue injury. In its judgment, the trial court stated that “This court can find no convincing evidence that the surgery which the plaintiff underwent on July 18, 2003 was causally related to the accident on May 10, 2002.” Plaintiff alleges that this finding is error; it was the accident at Sears that caused significant injuries to her back and left leg, and that her surgery and resulting damages were causally related to the accident.
The Louisiana Supreme Court, in Detraz v. Lee, 05-1263 (La.1/17/07), 950 So.2d 557, 561, set forth the appellate standard of review as follows:
Louisiana courts of appeal apply the manifest error standard of review in civil cases. Under the manifest error standard, a factual finding cannot be set aside unless the appellate court finds that the trier of fact’s determination is manifestly erroneous or clearly wrong. In order to reverse a fact finder’s determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the |flrecord establishes that the fact finder is clearly wrong or manifestly erroneous.
In this appeal, plaintiff alleges that the trial court erred in finding that the Hous-ley presumption was inapplicable. Plaintiff argues that she had no symptoms prior to the accident, and that it was the accident that caused her asymptomatic degenerative low back disease to become symptomatic, and resulted in the necessity of surgery.
In Housley v. Cerise, 579 So.2d 973 (La.1991), the Supreme Court held that a plaintiffs disability is presumed to have resulted from an accident, if: (1) the plaintiff was in good health before the accident; (2) that commencing with the accident, the symptoms of the plaintiffs disabling condition appeared and continuously manifested themselves afterwards; and (3) the medical evidence shows there is a “reasonable possibility” of a causal connection between the accident and the plaintiffs disabling condition. Id. at 980.
The medical evidence presented at trial showed that plaintiff suffered from a degenerative disc disease that predated the accident in question. Plaintiffs initial treating physician ordered a CT scan which revealed gradual spondylolisthesis at L4-5 and significant degenerative changes, and resulted in his diagnosis of degenerative low back disease, grade I spondylolisthesis and spinal stenosis. The trial court considered the fact that plaintiff suffered back pain prior to the accident, as established by her own admission to Ms. Lerille and in a 2000 intake form. He also considered the various medical records that indicated the existence of the preexisting condition. He finally noted that there was no proof to a medical probability that the plaintiffs disc condition was caused by the accident. We find no error in this conclusion. We have reviewed the medical evidence submitted and find no evidence linking the plaintiffs disc injury and resultant surgery to the |inaccident at issue. Accordingly, plaintiff has not met her burden of proving that there is a “rea *905 sonable possibility” of a casual connection between the accident and the plaintiffs disabling condition.
Because we find no error in the trial court’s determination that plaintiff failed to prove that the accident necessitated the need for surgery, we further conclude that the trial court did not err in its award of damages.
The standard for appellate review for abuse of discretion in the award of general damages is difficult to express and is necessarily non-specific. Youn v. Mantime Overseas Corp., 623 So.2d 1257, 1261 (La.1993). In Youn, this court recognized that:
[T]he discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Cone v. National Emergency Services, Inc., 99-0934 (La.10/29/99), 747 So.2d 1085, 1089. The trial court awarded general damages of $24,000.00 for what it concluded was a 12 month soft tissue injury. We find that the award in this case is not beyond that which a rational trier of fact could assess in this case, and therefore we do not see an abuse of discretion in the trial court’s award.
For the above discussed reasons, we affirm the decision of the trial court. Costs are to be borne equally be the parties.

AFFIRMED.

WICKER, J., concurs in part and assigns reasons.