STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 1081

LOUISIANA MACHINERY COMPANY, LLC and
STARR INDEMNITY & LIABILITY COMPANY

VERSUS

BIHM EQUIPMENT CO., SHAW ENVIRONMENT, INC., a subsidiary of
CHICAGO BRIDGE AND IRON COMPANY, XL INSURANCE AMERICA, INC.

Judgment rendered: AUG 1 0 2021

* * * * *

On Appeal from the Eighteenth Judicial District Court
In and for the Parish of West Baton Rouge
State of Louisiana
Docket No. 1042984

The Honorable Alvin Batiste, Jr., Judge Presiding

* * * * *

| | |
|---|---|
| Martin K. Maley, Sr.<br>Stephen M. Irving<br>Baton Rouge, LA | Attorneys for Defendant/Cross-<br>Claimant/Appellee<br>Don Bihm Equipment Company, Inc. |
| Tobin J. Eason<br>Mandeville, LA | Attorney for Defendant/Appellant<br>CB&I Environmental and<br>Infrastructure, Inc. |

* * * * *

BEFORE: GUIDRY, McCLENDON, WELCH, HOLDRIDGE, AND CHUTZ, JJ.

**McCLENDON, J.**

In this suit involving leases of construction rotary mixers, the lessee appeals a judgment awarding rent, attorney fees, and interest to the lessor. For the reasons set forth herein, we affirm in part and reverse in part.

## FACTS

CB&I Environmental and Infrastructure, Inc., previously known as Shaw Environmental, Inc. (CB&I), subleased two rotary mixers, ASW00451 (451) and ASW00391 (391), from Don Bihm Equipment Co., Inc. (Bihm).[1] Bihm had leased the mixers from Louisiana Machinery Company, LLC a/k/a Louisiana Cat (Louisiana Machinery). Bihm delivered 451 to CB&I on February 26, 2015, and it delivered 391 to CB&I on March 18, 2015. On July 9 and 10, 2015, respectively, 391 and 451 caught fire and burned while being used by CB&I in a construction project in Hackberry, Louisiana. The mixers were a total loss as a result of the fires.

On July 14, 2016, Louisiana Machinery and its insurer, Starr Indemnity & Liability Company (Starr), filed suit against Bihm and CB&I, seeking damages.[2] Bihm answered the suit and filed a cross-claim against CB&I. Initially, Bihm alleged in its cross-claim that, pursuant to its lease agreements with CB&I, CB&I was responsible for insuring the mixers and was obligated to hold Bihm harmless from any claims against it. Bihm later amended its answer and cross-claim to seek unpaid rent of $958,000.00 from CB&I, plus rentals accruing in the future until the mixers were repaired or the damages paid, together with the costs of the proceedings and defense costs, including attorney fees.

Subsequently, Louisiana Machinery, Starr, and Bihm filed a partial motion and order to dismiss with prejudice that was signed by the trial court on September 19, 2018. In said motion, Louisiana Machinery and Starr had moved to dismiss all of their claims on the main demand against Bihm and CB&I with prejudice. Bihm had also moved to dismiss

---

[1] We note that in the caption of its petition, Louisiana Machinery identified Shaw Environment, Inc. as a defendant; however, in the body of the petition, it properly stated that CB&I was formerly known as Shaw Environmental, Inc.

[2] Louisiana Machinery also named as a defendant CB&I's insurer, XL Insurance America, Inc. (XL). XL was dismissed from the suit with prejudice on August 16, 2017, when the motion for summary judgment it filed was granted on the basis that Louisiana Machinery was not an insured entity and thus had no standing to sue XL.

2

that part of its cross-claim against CB&I with prejudice as to any obligation of CB&I to provide insurance or to pay for the property damages to the two mixers. Bihm reserved its rights to proceed on its claims associated with the leases, including attorney fees, interest, and costs. The dismissal was based on CB&I's June 8, 2018 payment of $825,000.00 to Louisiana Machinery for the destroyed mixers.

Bihm's claims against CB&I proceeded to a bench trial on May 1, 2019. The evidence established that Bihm leased each mixer from Louisiana Machinery for $17,000.00 per month and then subleased the mixers to CB&I for $18,000.00 per month.[3] The language in the "Rental Agreement" for each mixer provided, in pertinent part:

> Lessee assumes full responsibility for erection, use, or operation of said equipment and asserted by any person shall be the responsibility of the Lessee who agrees to hold [Bihm] harmless of such claims. Rented equipment is to be returned in same condition as when received, less normal wear. In event of damage to equipment, rental continues until equipment is put back in serviceable condition acceptable to Lessor. Lessee is fully responsible for equipment including loss, destruction, or damage, whether with or without fault on part of Lessee. Lessee agrees to pay [Bihm] for any repairs or replacements at [Bihm's] established prices for similar repairs, parts or accessories.

CB&I paid rent on 451 from the date of delivery (February 26, 2015) through August 11, 2015, one month after the fire. CB&I paid rent on 391 from the date of delivery (March 18, 2015) through August 31, 2015, six weeks after the fire. When CB&I stopped paying rent to Bihm, Bihm stopped paying rent to Louisiana Machinery. On October 6, 2015, Bihm sent invoices to CB&I for the "[t]otal loss due to fire" for the mixers and, on March 11, 2016, sent a demand letter for the accrued rental payments and the replacement costs of the mixers.

On May 15, 2019, the trial court signed a judgment ordering CB&I to pay Bihm the principal sum of $378,000.00[4]; 25% attorney fees of $94,500.00; judicial interest of $49,547.84; and court costs of $1,775.16, which totaled $523,823.00. From this judgment, CB&I suspensively appeals. On appeal, CB&I raises three specifications of error. In its first assignment of error, CB&I contends that the trial court was manifestly

---

[3] The evidence at trial consisted of depositions, affidavits, pleadings filed earlier in the record, joint stipulations, and exhibits. The parties did not offer live testimony.

[4] Although the judgment does not identify the principal amount due, it is undisputed that the $378,000.00 award represents rental payments due.

erroneous in ruling that additional rent was owed under the lease after the mixers were destroyed. Next, CB&I contends that the trial court erred in imposing attorney fees based on a finding that there was an open account relationship between the parties under LSA-R.S. 9:2781. CB&I alleges that an open account cause of action was not pleaded, material facts were not alleged to assert such a cause of action, and the relationship of the parties was not an open account relationship. Finally, CB&I argues that the trial court erred in awarding any judicial interest, as the awards of additional rent and attorney fees were improper. Alternatively, CB&I avers that the trial court was manifestly erroneous in awarding judicial interest from the date Louisiana Machinery filed its lawsuit, as opposed to the date that Bihm amended its cross-claim to seek additional rent.

## STANDARD OF REVIEW

Louisiana courts of appeal apply the manifest error standard of review in civil cases. **Detraz v. Lee**, 05-1263 (La. 1/17/07), 950 So.2d 557, 561. Under the manifest error standard, a factual finding cannot be set aside unless the appellate court finds that the trier of fact's determination is manifestly erroneous or clearly wrong. **Id**. In order to reverse a factfinder's determination of fact, an appellate court must review the record in its entirety and find that a reasonable factual basis does not exist for the finding, and further determine that the record establishes that the factfinder is clearly wrong or manifestly erroneous. **Id**. Additionally, the existence of an open account is a question of fact subject to the manifest error standard of review. **Premier Tugs, LLC v. Caillou Island Towing Co., Inc.**, 19-1166 (La.App. 1 Cir. 6/18/20), 307 So.3d 218, 226. However, the proper interpretation of a contract is a question of law subject to *de novo* review on appeal. **Montz v. Theard**, 01-0768 (La.App. 1 Cir. 2/27/02), 818 So.2d 181, 185. When considering legal issues, the reviewing court accords no special weight to the trial court, but conducts a *de novo* review of questions of law and renders judgment on the record. **Id**.

## DISCUSSION

### Rent (Assignment of Error One)

In its first assignment of error, CB&I contends that the trial court was manifestly erroneous in ruling that additional rent was owed under the leases after the leased mixers

4

were destroyed. A lease is a synallagmatic contract by which one party, the lessor, binds himself to give to the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay. LSA-C.C. art. 2668. A lease contract forms the law between the parties, defining their respective legal rights and obligations. **Hornbeck Offshore Operators, LLC v. Cross Group, Inc.**, 16-0174 (La.App. 1 Cir. 10/31/16), 207 So.3d 1141, 1147, writ denied, 16-2095 (La. 1/9/17), 214 So.3d 872.

In its reasons for judgment, the trial court determined that in light of the provision in the leases that CB&I was fully responsible for the equipment, including loss, destruction, or damage, the "loss" included rental payments. The trial court noted that, according to the leases, CB&I was obligated to pay Bihm for any repairs or replacements, that rental continued until the equipment was put back into serviceable condition, and that CB&I was required to keep in force and effect a policy of insurance covering any injury, damage, or loss to the equipment.[5] Relying on this language, the trial court determined that the leases terminated at the point that the parties, particularly CB&I, acknowledged that the mixers could not be repaired and were considered totally destroyed, not on the date that the mixers burned or the date that Bihm acknowledged the mixers were a total loss. According to the trial court, it used July 14, 2016, the date Louisiana Machinery filed suit against Bihm seeking payment for the mixers, as the termination date of the leases, because at that point all of the parties were on notice that the mixers were destroyed.[6] The trial court found that based on the language in the leases, until the date all parties were on notice the mixers were destroyed, CB&I was obligated to pay rent. We disagree.

Louisiana Civil Code article 2714 provides, in pertinent part, that if the leased thing is totally destroyed, without the fault of either party, the lease terminates and neither party owes damages to the other. CB&I contends that additional rent beyond the dates

---

[5] Bihm acknowledged that pursuant to its lease with Louisiana Machinery it did not acquire the required insurance but passed that obligation on to CB&I pursuant to its sublease with CB&I. CB&I paid Louisiana Machinery for the loss of the equipment.

[6] The trial court noted that nothing in the record showed when CB&I acknowledged that the equipment was destroyed.

5

of destruction was not owed because the leases did not provide that rent was to continue if the mixers were destroyed, and therefore the provisions of Article 2714 control. According to CB&I, if the mixers were destroyed through its fault as a lessee, then Bihm as a lessor could recover damages pursuant to Article 2714; however, Bihm did not establish CB&I's fault or that Bihm sustained actual damages.

Article 2714 clearly provides that if the leased thing is totally destroyed, the lease terminates. This is more fully explained in the 2004 Revision Comments to Article 2714, which provide, in part:

> (b) If the loss or destruction is total, ... then under Civil Code Article 2714 (Rev. 2004), the lease terminates, regardless of whether the events that brought about the loss or destruction are attributable to the fault of either party. Although this Article contains the phrase "without the fault of either party," that phrase addresses the parties' right to claim damages. That is, if the loss or destruction was not attributable to the fault of either party, then "neither party owes damages to the other." Conversely, if the loss or destruction was attributable to the fault of one party then, of course, that party would owe damages to the other, but the lease would also terminate for the simple reason that the destruction of the whole object of the contract renders performance impossible. *Cf.* C.C. Art. 1876 (Rev. 1984). This is consistent with Civil Code Article 2728 (1870), which provided that the loss of the thing terminated the lease, without making any reference to the parties' fault.

The comments further provide that "[w]hen the requirements of Civil Code Article 2714 (Rev. 2004) are met, the lease terminates 'of right' or 'by operation of law,' that is, without the need for judicial intervention." LSA-C.C. art. 2714, 2004 Revision Comment (d). Nevertheless, the "fact that the lease terminates by operation of law does not mean that such termination is inescapable. The jurisprudence has held that the parties may prevent such termination by inserting appropriate clauses in the lease contract ... This jurisprudence continues to be relevant." LSA-C.C. art. 2714, 2004 Revision Comment (e).

In opposition to CB&I's argument, Bihm contends that the trial court correctly found that the parties did in fact prevent termination by operation of law because of the language in the rental agreements. However, we do not interpret the language in the leases to mean that CB&I was required to continue paying rent if the property was destroyed. Continuing rent was contemplated in the agreements only if the equipment was damaged and could be placed back into a serviceable condition. Here, however, the mixers were a total loss because of the fires, and the parties clearly acknowledged that

6

the equipment was destroyed as a result of the two fires. Although the trial court determined that the parties contracted to something other than termination of the leases upon the destruction of the mixers, nothing in the language of the rental agreements required CB&I to pay additional rent after the total loss of the equipment. In the absence of such language, the plain language of Article 2714 requires the termination of the leases.[7]

If the loss or destruction was attributable to the fault of one party, that party could owe damages to the other, but the lease still terminates "for the simple reason that the destruction of the whole object of the contract renders performance impossible." LSA-C.C. art. 2714, 2004 Revision Comment (b). Therefore, under Article 2714, Bihm could seek damages, if it was damaged, by proving CB&I caused the loss of the equipment, but it could not seek rental payments. The lease terminated by operation of law. Pursuant to Article 2714, CB&I did not owe additional rent after the destruction of the equipment.

For these reasons, we find that the trial court manifestly erred in its determination that the leases did not terminate until all of the parties acknowledged that the mixers were destroyed and that rent continued to accrue past the date of destruction. Accordingly, we find that the award of rental payments after the mixers were destroyed by the fires was in error.

### Suit on Open Account (Assignment of Error Two)

Next, CB&I contends that there was no open account relationship between the parties under LSA-R.S. 9:2781 and the trial court erred in imposing attorney fees based on a finding of an open account. CB&I further maintains that the trial court erred in even considering that there was an open account relationship, as no facts were pled contemplating a cause of action for an open account, nor was an open account cause of action mentioned.

---

[7] Moreover, if the provisions of a lease are unclear, they are interpreted against the party that furnished the text thereof. See LSA-C.C. art. 2056. Additionally, a lease is to be interpreted in favor of the obligor when there is doubt as to the interpretation of the contract that cannot otherwise be resolved. See LSA-C.C. art. 2057.

The evidence introduced at trial established that Bihm leased over 200 pieces of equipment, along with the mixers that are the subject of this suit, to CB&I on the Hackberry project. The equipment was to be used for an indeterminate period of time over at least a one-year to eighteen-month period. Each piece of equipment was covered by a separate lease that provided for daily, weekly, or monthly rental for a set price. After seventeen days in the rental cycle when the equipment was used, Bihm billed CB&I for rental for a month. CB&I was expected to pay each invoice monthly. Mark Holloway, Bihm's vice president of operations, testified that the rental terms were a set amount unless the project went beyond the year to eighteen months, whereupon there would be a rate increase, which did occur and was reflected in a revised change order. On March 11, 2016, Bihm's counsel sent CB&I a certified demand letter seeking the replacement costs of the mixers, rental costs, and attorney fees pursuant to LSA-R.S. 9:2781, with the supporting invoices attached for the accrued rental and the replacement costs of the mixers.

Attorney fees are not allowed except where authorized by statute or contract. **Whiddon v. Livingston Parish Council**, 04-1126 (La.App. 1 Cir. 5/6/05), 915 So.2d 863, 866. In this case, the rental agreements for the mixers did not provide for the recovery of attorney fees. However, attorney fees are authorized by statute where a claimant successfully sues another for failure to pay on an open account. LSA-R.S. 9:2781A. Statutes that provide for attorney fees are penal in nature and are to be strictly construed. **Bridges v. Lyondell Chemical Co.**, 05-1535 (La.App. 1 Cir. 6/9/06), 938 So.2d 786, 789, writ denied, 06-2196 (La. 11/17/06), 942 So.2d 541.

The open account law is contained in LSA-R.S. 9:2781, which provides, in pertinent part:

> A. When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant. Citation and service of a petition shall be deemed written demand for the purpose of this Section.
>
> ...
>
> D. For the purposes of this Section ..., "open account" includes any account for which a part or all of the balance is past due, whether or not

the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions. "Open account" shall include debts incurred for professional services, including but not limited to legal and medical services.

Louisiana Revised Statutes 9:2781D does not actually define an "open account," but instead gives examples of what may constitute an open account. **Bridges v. Citifinancial Auto Corporation**, 18-0734 (La.App. 1 Cir. 11/5/18), 266 So.3d 939, 942. However, the jurisprudence is replete with pronouncements that more concretely define the concept of an open account. **Id**. Notably, it has been held that an open account necessarily involves an underlying agreement between the parties on which the debt is based, such that where there is no contractual relationship between the parties, there can be no recovery on an open account basis. **Id**; **Accusess Environmental, Inc. v. Walker**, 15-0008 (La.App. 1 Cir. 12/17/15), 185 So.3d 69, 75. Moreover, the mere creation of a debt owed to a party does not give rise to an action on an open account. Inherent in the concept of an open account is that the account is for services or goods rendered. **Bridges v. Citifinancial**, 266 So.3d at 942.

In **Frey Plumbing Co., Inc. v. Foster**, 07-1091 (La. 2/26/08), 996 So.2d 969, 972 (per curiam), the Louisiana Supreme Court reversed a trial court's finding, on a motion for partial summary judgment, that a plumbing company's suit against a homeowner did not involve an open account because the services were for a first and only transaction between the parties, there was no line of credit, only one invoice was submitted for a single-time payment, and there was no indication that the parties intended to contract for future services. **Id**. at 970-71. Finding the language of the statute to be clear and unambiguous, the supreme court held that LSA-R.S. 9:2781D "must be applied as written. Under a plain reading of [the] statute, there is no requirement that there must be one or more transactions between the parties, nor is there any requirement that the parties must anticipate future transactions." **Id**. at 972. The court went on to explain that "[t]o the extent the prior case law has imposed any requirements which are inconsistent with the clear language of [LSA-R.S. 9:2781D], those cases are overruled." **Id**.

9

Following **Frey**, this court held that "any account," as used in LSA-R.S. 9:2781, means literally any account, including those based on construction accounts or contracts. See **R.L. Drywall, Inc. v. B & C Elec., Inc.**, 13-1592 (La.App. 1 Cir. 5/2/14), 2014 WL 3559390, at *6 (unpublished opinion).[8] In **Roofing Products & Building Supply Co. v. Mechwart**, 13-1506 (La.App. 1 Cir. 5/2/14), 2014 WL 2711793, at *3 (unpublished opinion), this court explained that an open account is a legal term of art and in the normal course of business, an open account is analogous to a credit account. Because the seller could not show "that the parties intended *at the time of the sale* to create an 'account' with a 'balance' that was to be paid by [the buyer] at a later date," this court reversed the trial court's finding that an open account existed for the sale of roofing supplies for a specific price. **Id**. In **Shamrock Management, LLC v. GOM Fabricators, LLC**, 18-0491 (La.App. 1 Cir. 7/10/19), 2019 WL 3025237, at *4 (unpublished opinion), writ denied, 19-01255 (La. 10/21/19), 280 So.3d 1171, this court reversed the trial court's determination that the construction contracts at issue fell within the three-year prescriptive period for an open account under LSA-C.C. art. 3494(4). This court, after referencing the **Frey** case, set forth the following factors for consideration: whether the total cost or price was left open or undetermined; whether other business transactions between the parties existed; whether one party extended a line of credit to another; whether there were running or current dealings; and whether there were expectations of future dealings, noting however, that the open account statute does not require multiple transactions or for parties to anticipate future transactions.[9] See **Factor King, LLC v.**

---

[8] In **R.L. Drywall**, this court relied on **Frey** to affirm the trial court's finding that a contract for a single construction job, rather than an ongoing relationship, constituted an open account where the builder had provided a bid to the owner for services and materials using an invoice which estimated a total amount of $11,012.00, but the project was later expanded and the builder submitted an invoice for $12,337.00 upon completion of the modified project. See **R.L. Drywall**, 2014 WL 3559390, at *1, 5-6.

[9] In **Shamrock**, this court set forth the following facts: the construction agreement between the parties fixed the original total price for construction, but the project was subsequently expanded and a number of change orders were issued; the subcontractor ultimately worked on three separate construction contracts for the general contractor over a period of approximately two years; the subcontractor issued a number of invoices to the general contractor, only four of which remained unpaid; and the subcontractor invoiced the general contractor upon reaching certain milestones in the projects and for the change orders as the additional work was done. **Shamrock**, 2019 WL 3025237, at *4. This court then determined that the trial court was manifestly erroneous in determining that these transactions constituted an open account because each invoice set forth a specific amount to be paid for specific work, pursuant to one of the parties' three original contracts. This court noted that despite the various change orders, the contract prices were clearly defined. This court then stated that there was no evidence in the record of a line of credit between the parties, nor was there evidence of ongoing or future projects that the general contractor contracted with the subcontractor to construct. **Id**.

10

**Block Builders, LLC**, 193 F.Supp.3d 651, 658-59 (M.D. La. 2016). More recently, relying on **Frey** and **R.L. Drywall**, this court in **SBL Construction, LLC v. Eymard**, 18-1691 (La.App. 1 Cir. 11/12/19), 289 So.3d 1079, 1082-84, affirmed the trial court's determination that a construction contract to construct a bulkhead as "a single transaction" for a specific price without the expectation of future dealings between the parties was an open account where the parties clearly agreed to a by-the-foot price, but the length of the bulkhead was not determined before construction.[10]

Unlike the case at bar, the preceding cases involved construction contracts, not leases or rental agreements. However, a recent case involving the rental of services provides guidance. In **Premier Tugs**, 307 So.3d at 221, this court affirmed the trial court's finding that a tugboat company's arrangement with another tugboat company to complete a job for third-parties, known as "brokering" the tugs, constituted an open account. This court affirmed the trial court's determination that the substance of the agreement was the rental of one tugboat company's services to another. **Id.** at 226. After the job was completed, the tugboat company would invoice the other tugboat company. This court commented that the tugboat company "clearly extended a line of credit to [the towing company] for the rental of [the tugboat company's] services and [the towing company] availed itself of such." **Id**. This court considered that the towing company rented tugboats from the tug company over one hundred times and that the tugboat company sent the towing company work totaling over $300,000.00 yearly. **Id.** However, in **Premier Tugs**, there were no written lease agreements between the parties. When the jobs were completed, invoices for differing amounts and differing periods of time were sent out with the expectation that they would be paid. Whereas, in the case before us, detailed written lease agreements regulated the conduct of the parties.

---

[10] Notably, this court referred to the **Shamrock** case in a footnote and its reliance on the factors set forth in **Factor King** to determine if a contract was an open account. **SBL Construction**, 289 So.3d at 1084 n.4. The court stated that even if it applied the factors, based on the open and undetermined price as a result of the unknown footage of the bulkhead, which was not established in the parties' agreement prior to commencement of construction, and thus, did result "in the running of a line of credit by [the builder] in favor of [the owner]," there was no error in the trial court's determination that the parties' transaction constituted an open account. **Id.**

This court has not been presented with the issue of whether a rental agreement can be the basis of an open account. In **H&E Equipment Services, Inc. v. Sugar & Power International, LLC**, 16-1070 (La.App. 1 Cir. 2/17/17), 215 So.3d 446, 451, this court did not determine whether a rental agreement for construction equipment was an open account, where the award of attorney fees was challenged, because the agreement itself provided that the lessee would be liable for all costs and fees, including attorney fees, incurred by the lessor in pursuit of any amounts due under the agreement. In **Gulfstream Services, Inc. v. Hot Energy Services, Inc.**, 04-1223 (La.App. 1 Cir. 3/24/05), 907 So.2d 96, writ denied, 05-1064 (La. 6/17/05), 904 So.2d 706, the parties did not establish that they reached an agreement on the lease or purchase of portable tanks or an agreement to extend credit or create an open account, and thus, this court affirmed the trial court's denial of attorney fees under the open account statute and its award of damages for enrichment without cause.

In this case, Bihm rented at times more than 200 pieces of equipment to CB&I over at least a year-and-a-half time period, billing CB&I monthly by invoice for the rental due based on a specific daily, weekly, or monthly rate, with the total amount due undetermined because the equipment was rented for an indeterminate period of time.[11] The rental payments were expected to be paid monthly. Bihm's claims for rent arose out of the lease agreements between it and CB&I, not from any services rendered or goods sold by Bihm. The lease agreements did not contain provisions allowing for attorney fees. To construe the open account statute to include the breach of rental agreements would violate the principle that statutes providing for attorney fees are penal in nature and are to be strictly construed. See **Bridges v. Lyondell**, 938 So.2d at 789. Additionally, rental agreements do not become the basis for an open account simply because there is a balance due under those agreements.[12] In every lease agreement, invoices may be sent out requiring payment of the agreed upon lease payment due. The entire premise of

---

[11] Louisiana Civil Code article 2703 provides in pertinent part that, in the absence of a contrary agreement, the rent is due at the beginning of the term.

[12] We note that under LSA-C.C. art. 3494, which sets out actions subject to a three-year prescriptive period, an action for arrearages of rent is listed separately from an action on an open account. See LSA-C.C. art. 3494(2), 3494(4).

LSA-R.S. 9:2781 is that there is an "open account," not that there are contractual mandated payments owed as part of a lease agreement. For these reasons, we find the trial court manifestly erred in determining that the arrangement between Bihm and CB&I was one of open account, entitling Bihm to an award of attorney fees under LSA-R.S. 9:2781.[13]

## Interest (Assignment of Error Three)

In its last assignment of error, CB&I contends that because the trial court erred in making any award for additional rent and for attorney fees, its award for judicial interest was also in error. Having found that Bihm is not entitled to rental payments, as the mixers were destroyed after the fires, or for attorney fees, as there was no open account relationship between the parties, we likewise find that Bihm is not entitled to any judicial interest on those amounts.

## CONCLUSION

For the above reasons, the May 15, 2019 judgment of the trial court in favor of Bihm Equipment Co., Inc., and against CB&I Environmental and Infrastructure, Inc., previously known as Shaw Environmental, Inc., is affirmed as to the trial court's award of $1,775.16 for court costs.[14] In all other respects, the judgment is reversed, including the $378,000.00 award for the principal amount due, the $94,500.00 award for attorney fees, and the $49,547.84 award for judicial interest. All costs of this appeal are to be paid by Bihm Equipment Co., Inc.

## AFFIRMED IN PART; REVERSED IN PART.

---

[13] Having determined that an open account did not exist in this matter, we need not determine whether Bihm adequately pled an open account claim.

[14] The parties did not challenge the award for court costs.

LOUISIANA MACHINERY COMPANY, LLC AND STARR INDEMNITY & LIABILITY COMPANY

STATE OF LOUISIANA

VERSUS

COURT OF APPEAL

BIHM EQUIPMENT CO., SHAW ENVIRONMENT, INC., A SUBSIDIARY OF CHICAGO BRIDGE AND IRON COMPANY, XL INSURANCE AMERICA, INC.

FIRST CIRCUIT

2019 CA 1081

**HOLDRIDGE, J., dissents in part.**

I respectfully dissent in this case. The trial court did not err and was not manifestly erroneous in its judgment ordering the lessee, CB&I Environmental and Infrastructure, Inc., to pay the lessor, Don Bihm Equipment Co., Inc., the principal sum of $378,000.00 together with judicial interest of $49,547.84. According to the lease, "In event of damage to equipment, rental continues until equipment is put back in serviceable condition acceptable to Lessor. Lessee is fully responsible for equipment including loss, destruction, or damage, whether with or without fault on part of Lessee." Under La. C.C. art. 2714, if the leased thing is lost or totally destroyed without the fault of either party, the lease terminates and neither party owes damages to the other. According to the 2004 Revision Comment (b) to La. C.C. art. 2714, in pertinent part, "if the loss or destruction was attributable to the fault of one party then, of course, that party would owe damages to the other...."

Therefore, both in accordance with the lease agreement and as recognized by the majority, under La. C.C. art. 2714 the lessee was responsible for the destruction of the mixers. Whether the amount awarded is past-due rental payments, which would be owed under the terms of the lease, or damages, which would be owed under La. C.C. art. 2714, the trial court was correct in awarding a monetary award in favor of the lessor and against the lessee, who destroyed the mixers and failed to insure the mixers in accordance with the lease provision, which expressly

provided, "Lessee agrees to procure, take out and keep in force and effect during the time that the Lease and Rental Agreement is in effect a policy of insurance covering any injury, damage, or loss to the equipment."

Therefore, I would affirm that part of the trial court's judgment ordering the lessee, CB&I Environmental and Infrastructure, Inc., to pay the lessor, Don Bihm Equipment Co., Inc., the principal sum of $378,000.00 together with judicial interest of $49,547.84.